## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **WILLIMENA JESSIE ROBINSON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION** |
| **v.** ) | |
| ) | **No. 17-1254-KHV** |
| **NANCY A. BERRYHILL** ) | |
| **acting commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| _____) | |

### MEMORANDUM AND ORDER

Willimena Robinson appeals the final decision of the Commissioner of Social Security to deny her claim for disability insurance benefits under Title II of the Social Security Act ("SSA"), 42 U.S.C. § 401 et seq. For reasons below, the Court affirms the judgment of the Commissioner.

### Procedural Background

On August 29, 2014, plaintiff applied for disability insurance benefits. See Transcript (hereinafter "Tr.") in Administrative Record (Doc. #8) filed December 12, 2017 at 142-48. Upon initial review and reconsideration, disability examiners denied her application. Tr. 63-68, 70-75. On May 29, 2015, she requested a hearing before an Administrative Law Judge ("ALJ"). Tr. at 76-77. On October 18, 2016, ALJ Michael D. Shilling heard her case. Tr. at 27-44. On December 16, 2016, the ALJ concluded that plaintiff did not have a disability under the SSA. Tr. at 16-22. On August 7, 2017, the Appeals Council denied plaintiff's request for review of the ALJ decision, which for purposes of judicial review, made it the final decision of the Commissioner. Tr. at 1-4; See 20 C.F.R. § 422.210(a).

**Legal Standards**

The Court reviews the Commissioner's decision to determine whether it is "free from legal error and supported by substantial evidence." Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009) (citation and quotation marks omitted); see 42 U.S.C. § 405(g). The substantial evidence standard requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Wall, 561 F.3d at 1052; Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The decision must be supported by "more than a scintilla, but less than a preponderance [of the evidence]." Wall, 561 F.3d at 1052; Lax, 489 F.3d at 1084. The Court analyzes the Commissioner's decision based on the record as a whole. Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994). Evidence is not substantial if it is "overwhelmed by other evidence in the record or constitutes mere conclusion." Grogan v. Barnhart, 399 F.3d 1257, 1261-62 (10th Cir. 2005) (citation and quotation marks omitted). When determining if substantial evidence supports the decision, the Court does not reweigh the evidence or retry the case, but examines the record as a whole, including anything that undercuts or detracts from the Commissioner's findings. Flaherty v. Astrue, 515 F.3d 1067, 1070 (10th Cir. 2007).

**Five-Step Inquiry**

The claimant bears the burden of proving disability. Wall, 561 F.3d at 1062. To meet this burden, a claimant must show she has a physical or mental impairment which prevents her from engaging in any substantial gainful activity, and which is expected to result in death or to last for a continuous period of at least 12 months. Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)(1)(A)).

The Commissioner uses a five-step process to evaluate disability. 20 C.F.R. § 404.1520;

Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). In the first three steps, the Commissioner determines whether (1) a claimant has engaged in substantial gainful activity since the alleged onset; (2) a claimant has a severe medically determinable impairment or combination of impairments; and (3) the severity of any impairment is equivalent to one of the listed impairments that are so severe as to preclude substantial gainful activity. See Williams, 844 F.2d at 750-51; 20 C.F.R. § 404.1520(a), (c), (d). If a claimant satisfies these three steps, the Commissioner will automatically find her disabled. If a claimant satisfies steps one and two but not three, the analysis proceeds to step four.

At step four, the ALJ makes specific factual findings regarding a claimant's abilities in three phases, determining (1) the claimant's physical and mental residual functioning capacity ("RFC"), (2) the physical and mental demands of past relevant work and (3) whether, given her RFC, she can meet the demands of relevant employment. See Winfrey v. Chater, 92 F.3d 1017, 1023-25 (10th Cir. 1996); Henrie v. U.S. Dep't of Health & Human Servs., 13 F.3d 359, 361 (10th Cir. 1993). If a claimant satisfies step four, i.e. if she shows that she is not capable of performing past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant is capable of performing other work in the national economy. Williams, 844 F.2d at 750-51

**Factual Background**

Plaintiff asserts that her disability began in September 20, 2008, and she was last insured on December 31, 2013. Tr. at 45. Thus, the relevant period of alleged disability is from September 20, 2008 through December 31, 2013. Tr. at 45. She has alleged the following conditions: pulmonary embolism, blood clots in her lungs and legs, TMJ, gastroesophageal reflux disease ("GERD"), depression, anxiety, hypertension and difficulty breathing. Tr. at 45-46.

**I.     Medical Evidence**

Plaintiff is 56 years old, five feet, eight and a half inches tall, and weighs 248 pounds. Tr. at 31, 142. On March 5, 2008, she went to Holton Hospital after experiencing left calf pain, chest heaviness and trouble breathing. Tr. at 248. After initial tests revealed a blood clot in her left leg, plaintiff went to St. Francis Hospital to receive in-patient treatment. Tr. at 248. At St. Francis, Dr. Samuel Y. Ho diagnosed her with pulmonary emboli, chronic obstructive pulmonary disease and deep vein thrombosis. Tr. at 260-61. She received in-patient treatment for four days. Tr. at 260-61. Upon discharge, Dr. Vance R. Lassey prescribed her Coumadin, a blood thinner. Tr. at 260-61.

After her hospitalization, plaintiff began follow-up treatment with Dr. Lassey. Tr. at 238, 240-41, 243, 247. On March 12, 2008, he opined that plaintiff could not return to work because she still had symptoms from her pulmonary embolism, such as chest pains and shortness of breath. Tr. at 247. Five days later, Dr. Lassey again advised her to not return to work because of these lingering symptoms. Tr. at 243. Although he noted progress throughout March, plaintiff's post-embolism symptoms persisted. Tr. at 238, 241, 243, 247. On April 2, 2008, Dr. Lassey opined that she "was making steady improvement" and would likely be able to return to work in two to four weeks. Tr. at 240. He also stated that her symptoms will "slowly improve . . . over the coming weeks to months" and asked plaintiff to explore "light duty" work options. Tr. at 240, 243. On April 7, 2008, Dr. Lassey allowed plaintiff to return to work for five hours per day. Tr. at 236-39.

On April 22, 2008, plaintiff told Dr. Lassey that she felt faint, shaky, lightheaded, anxious and heartburn. Tr. at 236-37. At the same visit, plaintiff stated recent family issues had increased her stress levels. Tr. at 236-37. Dr. Lassey noted that she no longer experienced pulmonary emobli symptoms but recommended that she see a cardiologist. Tr. at 237. On June 24, 2008, plaintiff

reported shortness of breath upon exertion, mild chest discomfort and mild numbness and tingling sensations in her fingertips. Tr. at 234-35. Plaintiff also expressed concern about possible interaction between Prozac, for which she recently received a prescription, and Coumadin. Tr. at 234-35. Dr. Lassey noted that her deep vein thrombosis and pulmonary emboli could be causing these new symptoms. Tr. at 234-35. He advised that she take the rest of the week off work, start taking Prozac and continue taking Coumadin. Tr. at 234-35. Notably, the foregoing events occurred months before plaintiff's alleged period of disability, which began in September of 2008. Tr. at 45.

On January 20, 2010, plaintiff reported pain and numbness in her left leg. Tr. at 321. Tests revealed no abnormalities or evidence of venous insufficiency. Tr. at 321. Throughout the remainder of 2010, plaintiff visited the Holton Family Health Clinic regularly for check-ups and did not report pain or numbness in her left leg. Tr. at 278-97. In May of 2011 and July of 2012, plaintiff visited the doctor for persistent coughing. Tr. at 319-20. On July 23, 2012, tests revealed partial atelectasis (a partial collapse of a lung or lobe in the lungs) but no pulmonary emboli or acute abnormalities. Tr. at 278, 319.

In late 2012 and early 2013, plaintiff reported multiple episodes of chest pain and trouble breathing. Tr. at 277, 322-24, 377. In March of 2013, plaintiff reported to a physician assistant under the supervision of Dr. David Allen that she had numbness on her left side and chest pains. Tr. at 324-25. The physician assistant ordered a head CT and an EKG, which revealed results consistent with "residual of previous sinus disease." Tr. at 325, 344. Both tests were otherwise negative. Tr. at 325, 344. On April 10, 2013, the physician assistant noted that the numbness had "resolved without recurrence." Tr. at 322; see tr. at 330 (describing "a[ two-week] episode" of numbness). That same day, Dr. Gilbert Katz, a cardiologist, ran multiple exams. He concluded that

"it is unclear what her symptoms represent," recommended that plaintiff seek pulmonary and neurological evaluations and planned to follow up with plaintiff in two to three months. Tr. at 330.

In May of 2013, plaintiff saw a pulmonary specialist regarding her shortness of breath. Tr. at 352. At this appointment, she reported left-side numbness, vision issues, fatigue and headaches. Tr. at 352. After a "fairly extensive cardiac workup," the specialist opined that pulmonary hypertension or chronic pulmonary disease did not cause her symptoms. Tr. at 349-50. He noted that plaintiff had gained approximately 70 pounds in three years and smoked seven to eight cigarettes a day. Tr. at 349-50. He suspected that her symptoms stemmed from "excessive weight gain and active smoking addiction." Tr. at 349-50.

After December 31, 2013 – when she last had insurance, plaintiff visited the doctor to manage chronic conditions and refill prescriptions. Tr. at 365-72. On February 2, 2015, she received treatment for chest pain and generalized anxiety disorder. Tr. at 372. Throughout 2015 and 2016, she sought treatment for a variety of symptoms, including lower back pain which radiated to other body parts, shortness of breath, slurred speech, heaviness of her right side, syncope (temporary loss of consciousness), headaches and migraines, weakness and numbness in her lower extremities and vertigo. See tr. at 362-81.

## II.   ALJ Hearing

On October 18, 2016, plaintiff testified at the hearing before the ALJ. Tr. at 27-44. Her testimony included the following relevant information:

Before her pulmonary embolism, plaintiff worked as a housekeeper at a hospital for approximately five years. Tr. at 33-34. In 2008, after her pulmonary embolism, she could not work for "about eight weeks." Tr. at 34. When she returned to work, she suffered extreme exhaustion

and dizziness, which required her to take consistent breaks. Tr. at 33-34. Because plaintiff's employer could not accommodate her needs, she quit approximately one month after returning to work. Tr. at 33. She has not worked since. Tr. at 33.

Plaintiff also testified about various symptoms and ailments that have affected her since the pulmonary embolism. In the years following her pulmonary embolism, she had trouble breathing while completing household chores such as vacuuming or washing dishes. Tr. at 34-35. Plaintiff testified that she requires breaks of 35 to 40 minutes after standing for 20 to 25 minutes. Tr. at 34, 40-41. Extended periods of standing caused her legs and back to feel weak. Tr. at 34. She also testified that her medication caused her legs to swell and feel heavy. Tr. at 38. Finally, plaintiff stated that she could lift more than five to seven pounds after her embolism and experienced numbness and weakness in her hands.[1] Tr. at 39, 41. Despite these symptoms, plaintiff cares for her 15-year-old granddaughter, shops and drives around town. Tr. at 32-33, 41.

Counsel represented plaintiff at the hearing. Tr. at 29. Counsel requested that a medical expert review the record and opine on plaintiff's conditions. Tr. at 30-31 ("I would ask maybe an

---

[1] The hearing transcript does not establish whether plaintiff's hand weakness occurred during the relevant period. The hearing transcript reads as follows:

> A [Plaintiff] . . . Things would just drop. My hand would just start shaking really bad and things would just, if well, if I have something in my hand they just drop.
>
> Q And (INAUDIBLE)
>
> A No, they got me seeing the . . . neurologist for that part.
>
> Q Oh, well, we're talking about from 2008 to 2013
>
> A No.

Tr. at 39.

Medical Expert to look at it."). In particular, counsel sought medical expert review to decide how plaintiff's weakness and numbness would affect the level of exertion she could perform in a work environment. Tr. at 31. The ALJ declined counsel's request without explanation.

### III.  ALJ Findings

The ALJ made the following findings:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2013.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of September 20, 2008 through her date last insured of December 31, 2013 (20 CFR [§] 404.1571 et seq.).

3. Through the date last insured, the claimant had the following medically determinable impairments: history of pulmonary embolism; deep vein thrombosis; and obesity (20 CFR [§] 404.1521 et seq.).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant did not have a severe impairment or combination of impairments (20 CFR [§] 404.1521 et seq.).

5. The claimant was not under a disability, as defined in the Social Security Act, at any time from September 20, 2008, the alleged onset date, through December 31, 2013, the date last insured (20 CFR [§] 404.1520(c)).

Tr. at 18-22 (emphasis omitted).

In his review of the record, the ALJ gave "little weight" to medical opinions from March and April of 2008. Tr. at 21. He reasoned that these opinions did not accurately reflect plaintiff's functioning while being treated because they described her limitations immediately after the onset of her impairments. Tr. at 21. More importantly, these events occurred before plaintiff's alleged onset date and thus, outside the relevant period. Tr. at 18, 20-21.

The ALJ noted that plaintiff's medically determinable impairments (pulmonary embolism,

deep vein thrombosis and obesity) could have reasonably caused her pain and other symptoms during the relevant period. Tr. at 19-20. When analyzing the severity of plaintiff's limitations, however, the ALJ determined that her "statements concerning the intensity, persistence and limiting effect of these symptoms [were] not entirely consistent with the medical evidence." Tr. at 19-20. In particular, he gave "significant weight" to the opinion of the agency medical consultant, who concluded that plaintiff's medically determinable physical impairments were non-severe. Tr. at 21. He also noted that many impairments did not meet the duration requirement of 20 C.F.R. § 404.1509 – i.e. these limitations did not last 12 continuous months. Tr. at 20-21. Based on the foregoing, the ALJ denied benefits at step two. Tr. at 22; 20 C.F.R. § 404.1520(c).

## **Analysis**

Plaintiff asserts that the ALJ erred in denying benefits at step two because (1) substantial evidence does not support his finding that plaintiff does not have a severe medically determinable impairment and (2) the ALJ failed to develop a sufficient record. Plaintiff's Social Security Brief (Doc. #9) filed January 25, 2018 at 8-15.

As noted, at step two, the ALJ determines whether plaintiff has demonstrated a severe medically determinable physical or mental impairment that has lasted or is expected to last 12 continuous months. 20 C.F.R. §§ 404.1420(a)(4)(ii), 404.1509. To reach the question of the duration and impact of the impairment, the ALJ must find that a claimant has a medically determinable impairment. 20 C.F.R. § 404.1421. A physical or mental impairment must be established by medical evidence and must result from anatomical, physiological or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. §§ 404.1420(a)(4)(ii), 404.1421. A claimant cannot establish an impairment

-9-

on the basis of symptoms alone. 20 C.F.R. § 404.1521. Thus, regardless how many symptoms an individual alleges, or how genuine the individual's complaints may appear, she cannot establish a medically determinable physical or mental impairment without objective evidence, e.g. medical signs and laboratory findings. Id.

An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997); 20 C.F.R. §§ 404.1520(c), 404.1522. To be considered significant, limitations must have more than a minimal effect on a claimant's ability to perform basic work. See Williams, 844 F.2d at 751. The regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522. Examples of basic work activities include walking, standing, sitting, lifting, pushing, pulling, carrying, handling, seeing, hearing, speaking, understanding, carrying out and remembering simple instructions, using judgment, responding appropriately to supervision and usual work situations, and dealing with changes in a routine work setting. Id.

**I.    Substantial Evidence Supports Step Two Denial**

Plaintiff asserts that the ALJ erred twice. First, plaintiff argues that the ALJ "misapplied the de minimus standard at step two." Plaintiff's Brief (Doc. #9) at 10. Second, plaintiff contends that the ALJ did not consider her "decreased sensation in the left upper and lower extremities [which was] consistent with a diagnosis of paresthesia." Id. at 13-14.

A.    De Minimus Standard

Plaintiff asserts that the ALJ misapplied step two. Courts have characterized step two's burden as de minimus. Cowan v. Astrue, 552 F.3d 1182, 1186 (10th Cir. 2008); Hinkle, 132 F.3d at 1352; Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir. 1997). Nevertheless, to satisfy step two,

plaintiff must establish more than "the mere presence of a condition or ailment." Cowan, 552 F.3d at 1186; Hinkle, 132 F.3d at 1352. Among other things, plaintiff must present some evidence that the impairment or combination of impairments occurred during the period of alleged disability and lasted 12 continuous months. Henrie, 13 F.3d at 360 (claimant must prove disability before date of last insured); 20 C.F.R. §§ 404.1420(a)(4)(ii), 404.1509.

Plaintiff argues as follows:

> [A]t step two, the issue is only whether there is some evidence that [plaintiff] suffered [a] medically determinable impairment that imposed limitations on [her] ability to work. The ALJ is not deciding whether [plaintiff] is disabled at step two. . . . [T]he evidence should have been enough to compel the ALJ to proceed with the sequential evaluation process.

Plaintiff's Brief (Doc. #9) at 13. In particular, plaintiff argues that her deep vein thrombosis and pulmonary emboli should have been considered severe medically determinable impairments. Id. at 10-13. Plaintiff notes that she suffered the following symptoms as a result of these impairments: exhaustion, shortness of breath, numbness and tingling in her fingertips and weakness which required her to rest with her legs elevated for 45-minute intervals. Id. at 11. In response, defendant argues that these limitations occurred outside of the relevant period or did not last 12 continuous months. Brief Of The Commissioner (Doc. #10) filed February 22, 2018 at 5-6.

To the extent plaintiff relies on her pre-onset condition, her claim lacks merit. Plaintiff alleged disability from September 20, 2008 until December 31, 2013, the date when she was last insured. Tr. at 18. Despite the relevant period, she asserts that the ALJ erred in giving little weight to her pre-onset limitations – e.g. Dr. Lassey's opinion that she could not work for two to four weeks in April of 2008. See Plaintiff's Brief (Doc. #9) at 10-13; tr. at 240-48, 260. The record however, supports the ALJ finding that "claimant had objective evidence of limitation in 2008,

largely before the alleged onset date." Tr. at 20. It also supports his conclusion that her pre-onset condition did not accurately reflect her functioning while being treated during the relevant period. Tr. at 21. Plaintiff fails to state how the record refutes these conclusions.

Further, with respect to plaintiff's impairments which occurred during the relevant period, the record supports the ALJ's step two determination. The ALJ noted that plaintiff's alleged limitations did not last, or were not expected to last, 12 continuous months. Tr. at 20-21; 20 C.F.R. §§ 404.1420(a)(4)(ii), 404.1509. For example, plaintiff's shortness of breath and numbness in fingertips and lower extremities began in 2008 and recurred in 2010 and 2013. Tr. at 234, 241, 321-22, 324-25, 349-52. The ALJ properly concluded that these symptoms did not meet step two's duration requirement because they did not recur until "a significant gap of over a year." Tr. at 20. Additionally, a State agency medical consultant opined that plaintiff's impairments were not severe. Tr. at 21. The ALJ properly gave this opinion "significant weight" because such consultants "are highly qualified physicians . . . who are experts in the evaluation of the medical issues in disability claims under the Act." Tr. at 21, 52-59; Social Security Ruling 96-6P, 1996 WL 374180, at *2. Plaintiff, on the other hand, relies in part on reports from a physician assistant – which the regulations do not include as an "acceptable medical source." See Plaintiff's Brief (Doc. #9) at 12 (citing tr. at 325); 20 C.F.R. § 404.1502(a)(8) (physician assistant not acceptable source for claims filed before March 27, 2017); see also Weaver v. Astrue, 353 F. App'x 151, 155 (10th Cir. 2009). Plaintiff does not reveal anything in the record that undercuts the ALJ findings or indicates that he erred in his step two analysis. See Flaherty, 515 F.3d at 1070. Thus, the Court rejects plaintiff's claim that substantial evidence does not support the ALJ's step two determination.

### B. Failure To Consider Medically Determinable Impairments

Plaintiff asserts that the ALJ erred because he did not consider all of her medically determinable impairments, namely her "decreased sensation in the left upper and lower extremities consistent with a diagnosis of paresthesia." Plaintiff's Brief (Doc. #9) at 13 (citing Tr. at 323, 325). In particular, plaintiff argues that "by failing to consider [paresthesia] a medically determinable impairment, [the ALJ] was required to ignore it." Id. at 13-14.

The record belies plaintiff's basic assertion – i.e. that the ALJ ignored her numbness and decreased sensation on her left side. The ALJ noted that plaintiff's medically determinable impairments (pulmonary emboli, deep vein thrombosis and obesity) could have caused her alleged symptoms, including those consistent with a diagnosis of paresthesia. See tr. at 19-20 (discusses left leg symptoms); 20 C.F.R. § 404.1529(a). When determining the severity of plaintiff's symptoms, the ALJ explicitly considered the limiting effect of her numbness and decreased sensation. Tr. at 19-20. In particular, he noted that objective medical tests did not support plaintiff's accounts of the severity of her pain and numbness in her left leg or reveal any abnormalities in 2010. Tr. at 20 (noting tests reveal no cause for pain or numbness)). He also observed that, in 2013, similar limitations did not meet the duration requirement, citing a report which stated that plaintiff's numbness persisted for approximately two weeks. Tr. at 20-21, 330; 20 C.F.R. § 404.1509. While the record shows that plaintiff reported numbness in May of 2013, this sole report does not refute the ALJ determination that plaintiff's impairments were not expected to last 12 continuous months. Tr. at 352. In sum, the ALJ concluded that a medically determinable impairment could have caused plaintiff's decreased sensation and numbness, but the record did not support a finding that these symptoms caused severe limitations. Tr. at 20; see

20 C.F.R. § 404.1529(b), (c)(1) (among other things, must find (1) symptoms related to impairments and (2) symptoms severe).

Further, plaintiff fails to show how the ALJ erred in considering decreased sensation and numbness symptoms – not an independent medically determinable impairment – because her argument relies on inapposite legal authority.  Plaintiff relies on Ireland v. Colvin, No. 14-1012-JWL, 2014 WL 7185008, at *4-6 (D. Kan. Dec. 16, 2014), to argue that because the ALJ did not consider paresthesia a medically determinable impairment, he could not consider any related symptoms when denying benefits at step two.  Plaintiff's Brief (Doc. #9) at 13-14.  In Ireland, an ALJ denied benefits at step four but erred at step two when he found that the claimant's mild cognitive disorder did not constitute a medically determinable impairment.  Ireland, 2014 WL 7185008 at *4-6.  The court held that this error was not harmless because in later steps of the disability analysis, an ALJ cannot consider limitations attributable to non-medically determinable impairments.  Id. at *6 (citing Gibbons v. Barnhart, 85 F. App'x 88, 91 (10th Cir. 2003) (quoting Social Security Ruling 96-8p, 1999 WL 374184, at *2)).  Here, however, the ALJ denied benefits at step two.  Thus, the ALJ's failure to consider paresthesia a medically determinable impairment could not have prejudiced plaintiff like claimant in Ireland.  Tr. at 21-22.  Because plaintiff's argument lacks adequate legal authority or support on the record, the Court overrules this claim.

**II.      Failure To Develop Sufficient Record**

Plaintiff also asserts that the ALJ erred by failing to develop a sufficient record.  Because social security disability hearings are not adversarial, the ALJ has a responsibility to develop an adequate record for each issue raised.  Hawkins, 113 F.3d at 1164.  The Tenth Circuit has held that an ALJ satisfies this duty by apprising herself of facts and circumstances pertinent to an issue.  See

-14-

Glass v. Shalala, 43 F.3d 1392, 1396 (10th Cir. 1994) (citing Younger ex rel. Younger v. Shalala, 30 F.3d 1265, 1269 (10th Cir. 1994)); see also Henrie, 13 F.3d at 361 (remand necessary when record "simply devoid" of evidence on issues). When counsel represents a claimant at the hearing, the ALJ can generally rely on counsel to fully develop issues. Hawkins, 113 F.3d at 1167. The ALJ has broad discretion in deciding whether to order a consultative exam or additional medical expert opinions. See Diaz v. Sec. of Health & Human Servs., 898 F.2d 774, 778 (10th Cir. 1990).

At the hearing, counsel for plaintiff requested that a medical expert review the record and opine on plaintiff's conditions. Tr. at 30-31 ("I would ask maybe an Medical Expert to look at it."). In particular, counsel sought medical expert review of plaintiff's decreased sensation and numbness on her left side. Tr. at 31. Plaintiff argues that the ALJ failed to develop a sufficient record when he denied counsel's request. Plaintiff's Brief (Doc. #9) at 14-16. Specifically, plaintiff argues that the ALJ needed the medical expert opinion because the state medical consultant did not evaluate her paresthesia. Id. at 16.

Again, the record belies plaintiff's assertion. While the state medical consultation focused on the severity of plaintiff's alleged medical impairments, which notably did not include paresthesia, the report noted plaintiff's numbness in 2013. Tr. at 56. Further, when counsel requested a medical expert opinion from the ALJ, he stated that medical reports concerning these 2013 symptoms were "the most relevant" to his request. Tr. at 30-31 (citing Ex. 7F at 20, 23). The state medical consultant noted that plaintiff's 2013 symptoms resolved without recurrence in one month. Tr. at 56. Based on medical records and the state medical consultant's notes, the ALJ determined that these limitations were not severe. Tr. at 21 (citing ex. 7F and medical consultant opinion). Thus, the ALJ decision demonstrates that the record contained sufficient information to consider plaintiff's

-15-

symptoms consistent with a diagnosis of paresthesia.  The Court overrules this claim.

**IT IS THEREFORE ORDERED** that the judgment of the Commissioner is **AFFIRMED**.

Dated this 14th day of May, 2018 at Kansas City, Kansas.

s/ Kathryn H. Vratil  
Kathryn H. Vratil  
United States District Judge